UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMEREX, a division of A-3         :
Acquisition Corporation,
                                  :

      Plaintiff,                   :
                                                 CIVIL ACTION NO.
                                  :
v.
                                  :              1:04-CV-2022-MHS
EUGENE WINKLER, et al.,
                                  :

      Defendants.

## ORDER

    This action is before the Court on several motions.  The Court's rulings are set out below.[1]

### Background

    Plaintiff Amerex, a division of A-3 Acquisition Corporation (Amerex), is engaged in the business of designing and installing air pollution control equipment.  Defendant Eugene Winkler worked for Amerex as a salesman and design engineer.  In February 2004, Winkler resigned and went to work for Amerair Industries, Inc. (Amerair), a direct competitor of Amerex.

---

[1] The Court grants the parties' motions for leave to exceed page limitations and defendants' motion to withdraw duplicate filing at Docket No. 105.

AO 72A
(Rev.8/82)

On June 11, 2004, Amerex filed this action against Winkler in the Superior Court of Cherokee County. The complaint alleged that Winkler had improperly retained and used Amerex documents in competition with Amerex and asserted claims for (1) breach of the duty of good faith and fair dealing and loyalty owed by Winkler to Amerex; (2) conversion and misappropriation of Amerex property, including but not limited to confidential, proprietary, and/or trade secret information; (3) tortious interference with Amerex's business and contractual relations; (4) violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq; and (5) stubborn litigiousness. (Compl. ¶¶ 18-22.)

Winkler removed the case to this Court and filed an answer and counterclaim. The counterclaim alleged that Amerex had fraudulently induced Winkler to remain employed with Amerex and had breached its contract with Winkler with respect to commission payments. Winkler subsequently amended his counterclaim to add a claim for age discrimination.

Amerex later amended its complaint to add Amerair and its former CEO, Robert J. Labbe, as defendants. The amended complaint asserts claims against Amerair and Labbe, as well as Winkler, for (1) conversion and

2

AO 72A
(Rev.8/82)

misappropriation of Amerex's property, (2) disparagement, tortious interference with Amerex's business and contractual relations, and misappropriation of corporate opportunities; (3) violation of the Georgia Trade Secrets Act; and (4) stubborn litigiousness. Defendants Amerair and Labbe filed a counterclaim against Amerex asserting claims for defamation, tortious interference with business relationships, and unfair trade practices in violation of O.C.G.A. § 10-1-372(a)(8).

The following motions are currently before the Court: (1) plaintiff's motion to reclassify documents from "Attorneys' Eyes Only" to "Confidential"; (2) defendants' motion to compel discovery; (3) plaintiff's motion for judgment on the pleadings with respect to defendants Amerair's and Labbe's counterclaims; and (4) plaintiff's motion for summary judgment on defendant Winkler's counterclaims.[2] The Court will address each motion in turn.

---

[2] The Court denies defendants' motions to strike plaintiff's motion to reclassify documents and to strike plaintiff's surreply. A motion to strike is properly addressed only to pleadings. Fed. R. Civ. P. 12(f). Motions and briefs are not pleadings. Fed. R. Civ. P. 7. Motions to strike a motion or a brief serve no legitimate purpose and unnecessarily multiply the proceedings. Rather than filing a motion to strike, the proper method for challenging a motion is to file a response in opposition to the motion, and the proper method for challenging an improperly filed brief is to file a notice of objection to the brief. The Court will consider defendants' arguments as if they had thus been properly presented.

3

## Discussion

I.   Plaintiff's Motion to Reclassify Documents

Amerex moves that certain documents currently designated as "Attorneys' Eyes Only"under the June 1, 2005, Consent Protective Order be reclassified as "Confidential" so that counsel can show the documents to Amerex in preparing and prosecuting the case. Amerex contends that these documents were created during Winkler's employment at Amerex and thus should not be protected from disclosure to Amerex. In response, defendants contend that Amerex's motion was rendered largely moot prior to filing by their voluntary reclassification of the large majority of documents designated by Amerex, that Amerex's counsel violated the Consent Protective Order by filing the motion without first conferring with opposing counsel in good faith, and that the motion was thus filed in bad faith.

The Court concludes that counsel for Amerex failed to confer in good faith with opposing counsel before filing the motion to reclassify. The record shows that before Amerex filed the motion, defendants had agreed to reclassify the large majority of the documents designated by Amerex. The sole dispute between the parties was with regard to certain designated documents that either included only the first page of an underlying electronic

4

document or listed a number of separate, underlying files. Amerex insisted that each of these underlying electronic documents and files should be reclassified as well. Defendants stated that they were willing to consider reclassifying these documents and files but that they needed more time to review them. However, instead of allowing defendants a reasonable amount of time to conduct such a review, Amerex proceeded to file its motion to reclassify, which covered not only the disputed documents and files but also the documents that defendants had already agreed to reclassify.

The June 1, 2005, Consent Protective Order provides in part: "If counsel for either party objects to designation of particular documents or information as "Confidential" or "Attorney's Eyes Only" and they cannot resolve such objection after conferring in good faith, then the objecting party shall be permitted to bring the matter to the Court for resolution." Order at 3 (emphasis added). As described above, counsel for Amerex failed to confer in good faith with opposing counsel regarding the only documents whose designation is in dispute. Under the terms of the Consent Protective Order, unless and until such a good faith effort is made, Amerex is not entitled to bring the matter to the Court. Accordingly, Amerex's motion to reclassify documents is denied.

5

II.   <u>Defendants' Motion to Compel Discovery</u>

Defendants move to compel Amerex to provide further responses to Interrogatory Nos. 1-6 and Document Request Nos. 1-25 and 30-31 of Defendants' Second Interrogatories and Document Requests. The motion is granted in part and denied in part as follows.

<u>Interrogatory No. 1.</u>  The motion is granted.  Amerex is ordered to provide a further response either identifying the persons who assisted counsel in preparing its responses or stating under oath that the responses were prepared solely by counsel without any assistance.

<u>Interrogatory Nos. 2-5.</u>  The motion is denied.  These interrogatories, which seek the identity of (1) every copyright and patent held by Amerex, (2) all of Amerex's customers for aftermarket parts since 2000, (3) every employee since 1996 who prepared drawings or specifications for bid proposals or contracts, and (4) each such employee's three previous employers, are overly broad and unduly burdensome. Defendants are entitled to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The claims and defenses in this case all concern specific documents and materials purportedly belonging

6

AO 72A
(Rev.8/82)

to Amerex that defendants allegedly misappropriated. Defendants have made no showing of how the extremely broad categories of information requested in these interrogatories are relevant to these claims and defenses.

Interrogatory No. 6. The motion is granted. Amerex is ordered to supplement its response to provide a complete specification of the types and amounts of its claimed damages.

Document Request Nos. 1 and 4. The motion is denied. These requests, which seek production of all manuals used by Amerex employees since 2000, are overly broad. Defendants have made no showing that every single manual used by Amerex in the last five years is relevant to the claims and defenses in this case.

Document Request Nos. 2-3, 20. The motion is denied. These requests, which seek all product specifications provided to customers or contractors since 2000, all documents relating to new product development, design, and testing since 2000, and all design and manufacture specifications provided to fabrication contractors since 1996, are overly broad and unduly burdensome.

7

Document Request No. 5. The motion is denied. This request, which seeks all Amerex documents since 2000 that mention, among others, defendant Winkler, is overly broad. As an employee of Amerex during most of this time period, Winkler's name is likely to be found on hundreds of documents that would have absolutely no relevance to the claims and defenses in this case.

Document Request Nos. 6, 8, 12-15, 17-19, and 21. The motion is denied.   These requests, which seek documents that current Amerex employees brought with them from prior employers or documents derived from such documents, are overly broad.  These documents would only be relevant if they were the source of the documents that Amerex alleges defendants misappropriated. The possibility that current Amerex employees may have misappropriated other, unrelated documents from their former employers is of no relevance to the claims or defenses in this case.[3]

---

[3] Defendants contend that "it is industry practice for an engineer to bring with him or her to a new employer drawings, specifications and materials which the engineer has created over the course of his or her career at other employers." (Mem. in Supp. of Defs.' Mot. to Compel Discovery at 21.)  Even if so, it is no defense to a claim of misappropriation that such misappropriation is a widespread practice.

8

Document Request Nos. 7, 9-11, and 16. The motion is denied. These requests, which seek documents that Amerex used in preparing bids for certain projects or submitted to customers in connection with those projects, are overly broad. Once again, the only relevant documents are those that Amerex claims defendants misappropriated. Whether other, unrelated documents that Amerex used in its bid proposals or submitted to customers were proprietary to Amerex is irrelevant to the claims and defenses in this case.

Document Request Nos. 22-25. The motion is granted. These requests seek documents related to certain customers or potential customers. Although not entirely clear, it appears that each of these customers had projects on the basis of which Amerex claims damages due to defendants' use of allegedly misappropriated documents. The requested documents could be relevant to the issue of whether Amerex was a competitive bidder, or even a viable candidate, for these projects and thus whether it is entitled to recover damages from defendants for their use of the allegedly misappropriated documents in connection with the projects. Therefore, Amerex is ordered to produce the requested documents.

AO 72A
(Rev.8/82)

Document Request Nos. 30-31. The motion is denied. These requests, which seek the hard drives of all computers used by five Amerex employees and Amerex's server back-up tapes since 2000, are overly broad. The large majority of the documents contained on these computers and back-up tapes have no arguable relevance to the claims and defenses in this case. To the extent that they may contain some relevant documents, such documents are discoverable by making an appropriately specified request.

III.   Plaintiff's Motion for Judgment on the Pleadings as to Defendants Amerair's and Labbe's Counterclaims

In their counterclaim, defendants Amerair and Labbe allege that, before they were added as defendants to this case, Amerex wrote letters to one or more of Amerair's current or potential customers falsely representing that Amerex was engaged in litigation against Amerair and Labbe as well as Winkler. Defendants further allege that the letters falsely stated that they had misappropriated Amerex's proprietary information or trade secrets and were using such information in Amerair's current bid materials to those customers. Defendants also allege that the letters threatened to subpoena company documents of Amerair's customers and/or threatened to involve them in litigation. Finally, defendants allege that Amerex included with such

10

letters a copy of the then proposed amended complaint in this case making certain allegations against Amerair and Labbe and implying that they were already parties to this case.  (Counterclaim ¶¶ 7-11.)  Based on these allegations, defendants assert claims of defamation, tortious interference with contractual and prospective business relations, and unfair trade practices in violation of O.C.G.A. § 10-1-372(a)(8).

Amerex moves for judgment on the pleadings as to all three counterclaims.  Amerex argues that the claims are based on a single letter it sent to two customers, International Steel Group (ISG) and HATCH, on July 29, 2005, which is attached to Amerex's reply to the counterclaim.  The letter informed the customers of the pending litigation against defendant Winkler, warned them that Amerex might subpoena bid documents submitted to them by Winkler and Amerair, and enclosed a copy of Amerex's proposed amended complaint, which it stated had been filed with the Court.  Amerex argues that defendants' claims based on this letter must fail because all the statements in the letter are true, and all the allegations in the proposed amended complaint are absolutely privileged.

11

Defendants argue that Amerex is not entitled to judgment on the pleadings because (1) defendants have alleged the existence of multiple letters and statements made by Amerex as the basis of their claims, not just the single letter identified by Amerex; (2) discovery is ongoing, and they have already uncovered additional evidence and communications by Amerex that will support their claims at trial; (3) the allegations in the proposed amended complaint are not absolutely privileged because Amerex disclosed them before the amended complaint was filed in the record as a pleading; and (4) Amerex disclosed its proposed amended complaint to third parties not merely to apprise them that a lawsuit existed but to disparage defendants' business and to tortiously interfere with defendants' business relations.

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[j]udgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). The Court must accept the facts alleged in the complaint as true and view them in the light most favorable to defendants. Id. The Court may grant the motion only if defendants "'can prove no set of facts' which would allow [them] to prevail." Palmer & Cay,

Inc. v. Marsh & McLennan Cos., 404 F.3d 1297, 1303 (11th Cir. 2005)(quoting

Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002)).  The Court concludes

that Amerex is not entitled to judgment on the pleadings on defendants'

counterclaim.

First, the pleadings do not establish that the single letter on which

Amerex bases its entire argument is the sole evidence supporting defendants'

claims.  The counterclaim alleges that Amerex wrote one *or more* letters to

customers.  (Counterclaim ¶¶ 7-11.)  Accepting this allegation as true and

viewing it in the light most favorable to defendants, the Court must assume

that Amerex may have written multiple letters.  Therefore, the Court may

not grant judgment on the pleadings to Amerex based solely upon its

contention that the single letter it has identified is the only letter it sent.

Second, even if the pleadings established that the letter identified by

Amerex was the only one sent, Amerex would still not be entitled to judgment

on the counterclaim.  Amerex contends that the allegations against Amerair

and Labbe in the proposed amended complaint enclosed with the letter are

absolutely privileged under O.C.G.A. § 51-5-8.  That Georgia Code section

affords an absolute privilege to allegations "contained in regular pleadings

13

filed in a court of competent jurisdiction." O.C.G.A. § 51-5-8.  This absolute

privilege, however, "has not been extended to publishing the contents of

official court documents outside the judicial process."  O'Neal v. Home Town

Bank of Villa Rica, 237 Ga. App. 325, 332 (1999).[4]  At most, such publication

may be protected by a conditional privilege, which, even if established, may

be overcome by a showing that the publication was malicious.  Id. at 332-34.

Here, defendants allege that Amerex sent the letter along with the proposed

amended complaint not simply to apprise the customers of the existence of

this lawsuit but for the malicious purpose of disparaging Amerair's business

and interfering with its prospective business relationships.  The Court must

accept these allegations as true; therefore, Amerex is not entitled to judgment

on the pleadings.

---

[4] Defendants contend that the privilege also does not apply because, at the
time the letter was sent, the amended complaint had not been filed of record as a
pleading.  However, the Georgia courts have not strictly limited the application of
the privilege to "pleadings" but have more broadly construed the law to include
"official court documents" and acts of "legal process."  O'Neal, 237 Ga. App. at 332
(quoting Williams v. Stepler, 227 Ga. App. 591, 595 (1997)).  Thus, the Court
believes that the law would cover a proposed amended complaint attached to a
motion for joinder of additional parties.

14

IV.   Plaintiff's Motion for Summary Judgment on Defendant
      Winkler's Counterclaims

The allegations of defendant Winkler's counterclaim are as follows.
Beginning in February 1990, Winkler was employed as a salesperson and
design engineer by plaintiff's predecessor, Amerex Industries, Inc., under an
employment agreement that provided for Winkler to be paid commissions on
jobs he sold.  In September 2003, Amerex Industries found itself in financial
trouble and undertook an assignment for benefit of creditors.  In October
2003, plaintiff purchased most of the assets of Amerex Industries.
Subsequently, the president of Amerex orally promised Winkler that he
would be paid commissions in accordance with his employment agreement.
However, Amerex did not pay Winkler his commissions for the fourth quarter
of 2003 by the January 31, 2004, due date.  On February 13, 2004, Winkler
was told that Amerex would not pay his commissions unless he signed a new
employment contract that included a covenant not to compete and reduced
both his salary and the amount of commissions he could earn.  Winkler
viewed the ultimatum to sign a less favorable employment agreement as a
constructive discharge.  Accordingly, on February 19, 2004, he resigned from
his employment at Amerex.

AO 72A
(Rev.8/82)

Based on the foregoing allegations, Winkler asserts the following counterclaims against Amerex. First, Winkler claims that Amerex's promises to pay him commissions in accordance with his original employment agreement resulted in the formation of a binding contract that Amerex breached when it failed to pay him the commissions due for the fourth quarter of 2003. Second, Winkler claims that Amerex fraudulently induced him to remain employed by Amerex by promising to pay him commissions in accordance with his original employment agreement.  Finally, Winkler alleges that Amerex demanded that he accept less favorable terms of employment, including reduced compensation, because of his age and thereby constructively discharged him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.

Amerex moves for summary judgment on all three claims.  First, Amerex argues that it has no obligation to pay Winkler any commissions that might have been owed to him by its predecessor, Amerex Industries, because it only purchased the assets of Amerex Industries and did not assume any of its liabilities.  As for the alleged oral promises on which Winkler relies, Amerex argues that any such promises are unenforceable because they lack consideration or are too vague to create a contract; and because, under

16

Georgia's Statute of Frauds, an agreement to answer for the debt of another must be in writing. Amerex also argues that such promises, even if made, cannot support a claim for fraud as a matter of law. In addition, Amerex argues that it expressly conditioned any obligation to pay Winkler's commissions on his agreement to sign a new employment agreement, which he refused to do.

Finally, with respect to Winkler's ADEA claim, Amerex argues that it does not have the requisite number of employees to be subject to the ADEA. Amerex also argues that Winkler cannot make out a prima facie case of age discrimination because there is no evidence that it took any adverse employment action against Winkler, or that younger employees were treated more favorably than Winkler. Even if Winkler could make out a prima facie case, Amerex contends, the evidence establishes that it had a legitimate, nondiscriminatory reason for insisting that Winkler sign a new employment agreement.

In response, Winkler argues that summary judgment on his contract claim is inappropriate because there are genuine issues of fact as to whether Amerex orally agreed to pay him commissions in accordance with his original

17

employment agreement with Amerex Industries and as to the precise terms of any such agreement.   Winkler argues that the oral promises were supported by valuable consideration in the form of his agreement to continue working for Amerex.   Winkler also argues that Amerex's oral promises constitute actionable fraud because at the time they were made Amerex had no intention of performing them.   Finally, Winkler acknowledges that, contrary to alleged public representations, Amerex has submitted sworn testimony that it actually employed fewer than 15 employees at the time of Winkler's resignation and thus is not subject to the ADEA.   Consequently, Winkler states that he is willing to stipulate to the dismissal of his ADEA claim.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."   In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held that this burden could be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case."   Id. at 325.   At that point, the burden shifts to the non-moving party to go beyond the

18

pleadings and present specific evidence giving rise to a triable issue.  Id. at
324.

In reviewing a motion for summary judgment, the Court must construe
the evidence and all inferences drawn from the evidence in the light most
favorable to the non-moving party.  WSB-TV v. Lee, 842 F.2d 1266, 1270
(11th Cir. 1988).  Nevertheless, "the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise properly supported
motion for summary judgment; the requirement is that there be no genuine
issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)(emphasis in original).

After a careful review of the evidence, the Court concludes that plaintiff
is entitled to summary judgment on Winkler's breach of contract claim
insofar as it seeks to recover commissions earned while Winkler was
employed by plaintiff's predecessor, Amerex Industries.  Plaintiff's alleged
oral promise to pay such commissions constitutes a promise to pay the debt
of another which, under Georgia's Statute of Frauds, must be in writing.
O.C.G.A. § 13-5-30(2).

The Court further concludes that there are genuine issues of fact precluding summary judgment on Winkler's breach of contract claim insofar as it seeks to recover commissions earned while Winkler was employed by plaintiff. Winkler has presented evidence through his own testimony that plaintiff orally agreed to pay such commissions on the same terms as provided in his prior employment agreement with Amerex Industries. Even though Winkler was admittedly an at-will employee, under Georgia law, "an at-will employee may sue for any compensation that is due him under an oral contract, based on services actually performed by him up to the time of discharge." Livernois v. Medical Disposables, Inc., 837 F.2d 1018, 1023 (11th Cir. 1988).

The Court also concludes that there are genuine issues for trial on Winkler's fraud claim. Winkler has presented sufficient evidence for a jury to find that plaintiff orally agreed to pay plaintiff commissions on the same terms as his prior employment agreement with Amerex Industries, but that at the time it made that promise plaintiff did not intend to pay such commissions unless Winkler agreed to a less favorable employment agreement. The general rule is that actionable fraud may not be predicated upon the failure to perform some act in the future or the mere failure to

AO 72A
(Rev.8/82)

perform promises made.  <u>Buckley v. Turner Heritage Homes, Inc.</u>, 248 Ga. App. 793, 795 (2001).  However, "[a]n exception to the general rule exists where a promise as to future events is made with a present intent not to perform. . . ."  <u>Id.</u>

Finally, the Court concludes that plaintiff is entitled to summary judgment on Winkler's ADEA claim because the evidence establishes that at the time of Winkler's resignation, plaintiff did not have a sufficient number of employees to be subject to the ADEA.  29 U.S.C. § 630(b); <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1263 (11th Cir. 1997).

<u>Summary</u>

For the foregoing reasons, the Court DENIES plaintiff's motion to reclassify documents [#72], DENIES defendants' motion to strike plaintiff's motion to reclassify documents [#77], DENIES plaintiff's motion for judgment on the pleadings on defendant Amerair's and defendant Labbe's counterclaims [#80], GRANTS IN PART and DENIES IN PART defendants' motion to compel discovery [#85], GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment on defendant Winkler's counterclaims [#92], DENIES defendants' motion to strike plaintiff's surreply

21

[#94], and GRANTS defendants' motion to withdraw duplicate filing at Docket No. 105 [#106].

IT IS SO ORDERED, this ⎯⎯⎯ day of December, 2005.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

22